IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

JEANINE J.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:21-cv-04044-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12), the Defendant's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Jeanine J. filed an application for supplemental security income (SSI) on March 8, 2019, alleging disability beginning on January 1, 2017. Her SSI claim was denied initially on July 11, 2019 and upon reconsideration on December 12, 2019. Jeanine filed a request for hearing concerning her application which was held on August 4, 2020 before the Honorable David W. Thompson (ALJ). At the hearing, Jeanine was represented by an attorney, and Jeanine and a vocational expert (VE) testified. Following the hearing, Jeanine's claim was denied on September 23,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Docs. 7, 8) on the docket.

1

2020. Her request for review by the Appeals Council was denied on January 13, 2021, making the ALJ's Decision the final decision of the Commissioner. Jeanine timely filed the instant civil action seeking review of the ALJ's Decision on March 15, 2021.

## II

Jeanine argues the ALJ committed the following errors: 1) the ALJ erred in assessing Jeanine's credibility and in discounting the substantial medical evidence supporting her symptoms ; 2) the physical RFC of medium exertional work with the ability to frequently climb ramps, stairs, and ladders and occasionally climb ropes and scaffolds is not supported by any medical evidence; and 3) the ALJ failed to include all of Jeanine's mental limitations into an appropriate hypothetical question posed to the VE.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Jeanine claims error on the ALJ's part at Steps Four and Five.

**A**

At Step One, the ALJ determined Jeanine had not engaged in substantial gainful activity since March 8, 2019, the application date. At Step Two of the disability analysis, the ALJ determined Jeanine had the following severe impairments: spine disorders; dysfunction of the left hip; depression/bipolar related disorders; and trauma- and stressor-related disorders. At Step Three, the ALJ determined Jeanine did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant as the [RFC] to perform medium work as defined in 20 CFR 416.967(c) except she is limited to frequent climbing of ramps, stairs, and ladders. She is limited to occasional climbing of ropes and scaffolds. She is limited to frequent kneeling, crouching, and crawling. She is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step, self-evident tasks, easily resume after momentary distraction.

AR 52. Based on that RFC, the ALJ determined at Step Five that, considering Jeanine's age, education, work experience, and RFC, there were jobs that existed

in significant numbers in the national economy that Jeanine could perform. Thus, the ALJ concluded Jeanine had not been under a disability since March 8, 2019.

**B**

Jeanine argues that the ALJ erred in finding that she was able to perform medium work on a sustained basis where he based that finding, in part, on Jeanine's statements that she could prepare simple meals, pay bills, go to doctors' appointments, and play pool. She contends the ALJ failed to consider she had good days and bad days, and he used boilerplate language to discount her statements which the Seventh Circuit Court of Appeals has found problematic. The Commissioner disputes the ALJ erred in his subjective symptom evaluation where he was entitled to consider Jeanine's consistently normal examination findings and the fact that she did not pursue more aggressive treatment and repeatedly discharged herself from physical therapy. The Commissioner also argues that the ALJ did not use the boilerplate language quoted by Jeanine in her brief, did not equate her activities of daily living with the physical ability to work fulltime, and appropriately considered her subjective allegations related to her mental functioning.

SSR 16-3p[2] provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other

---

[2] Jeanine incorrectly cites to SSR 96-7p, but that ruling was rescinded and superseded by SSR 16-3p which became applicable to decisions made on or after March 28, 2016. *See* SSR 16-3p at *1.

symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

The Court initially points out that the ALJ did not, in fact, use the boilerplate language with which Jeanine takes issue. Instead, the ALJ explained that Jeanine's "statements concerning the intensity, persistence and limiting effects of [her severe] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in [the] [D]ecision." AR 53. That was an accurate recitation of how the ALJ was to evaluate symptoms under Section 416.929, and his reasoning in that regard is free of reversible error; the Court can discern as much because the ALJ built an accurate and logical bridge from the evidence to his conclusions as to Jeanine's statements of symptoms. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions). For example, the ALJ detailed Jeanine's objective medical evidence which provided she underwent a cervical spine discectomy and fusion in December 2017, moderate osteolytic change at the left hip articulation, stable post-operative changes with no evidence of hardware failure, and mild lower lumbar spondylosis. Some examinations revealed normal range of motion, no neurological deficits, full strength in each of her extremities, normal reflexes, normal strength in her back, a steady gait and normal ambulation, and negative straight leg raises. Other examinations revealed decreased strength with left hip flexion and abduction, slight decrease in strength with bilateral knee extension and flexion, antalgic gait, limited range of motion in the back and bilateral shoulders, reduced hip and knee strength, and a "very positive" bilateral straight leg raise. The ALJ did not entirely reject the objective evidence of deficits caused by Jeanine's physical impairments, explaining that Jeanine was limited to a range of medium

6

work due to her combined physical symptoms and effects including pain, limited range of motion, and gait deficits. AR 57. He explained his reasons for finding the objective medical evidence did not fully support Jeanine's subjective symptoms including that "two different medical providers suggested the claimant's report of symptoms was inconsistent with her presentation." *Id*.

The ALJ further relied upon the fact that there were inconsistencies in objective findings. Contrary to Jeanine's insistence that the ALJ did not explain how such inconsistencies translated to her lacking credibility, the ALJ's explanation appeared in his recitation of opposing record evidence which was developed over the course of a relatively short period. He detailed how a neurosurgery provider found Jeanine had full strength, normal reflexes, normal gait, and good stride during examination in April 2019. "*However, also in April 2019*," a physical therapist documented decreased range of motion and strength and gait abnormalities. AR 57 (emphasis added). Just three months later, in July 2019, Jeanine's primary care provider noted negative straight leg raises, normal deep tendon reflexes, and normal ambulation. Then, just two months later, in September 2019, Jeanine was noted to be using a cane but had no vertebral tenderness or gross weakness. "*Yet*," three months after that, in January 2020, a physical therapist noted Jeanine was "very tender," had jump response to cervical and lumbar palpation, antalgic gait, and other positive examination findings. *Id*. (emphasis added). The ALJ obviously found it curious that Jeanine's examination results could vary as they did in that short timeframe.

The foregoing reveals the ALJ also simultaneously considered the location, duration, frequency, and intensity of Jeanine's pain and precipitating and aggravating factors as one provider noted "she is able to bend and twist her back in many different directions that one would not expect someone with severe back pain to willingly attempt," and another provider "stated the claimant

7

demonstrated signs slightly out of proportion to her physical examination." AR 57. With regard to the treatment Jeanine received to treat her symptoms, the ALJ found inconsistency between complaints of symptoms and extent of treatment where Jeanine was referred for physical therapy on three occasions but was discharged from her first two attempts at her direction, had poor attendance at physical therapy, did not receive injections, had not been recommended surgery, had not followed up with a neurosurgeon, and had not seen an orthopedist for her hip pain. The ALJ sufficiently considered the relevant factors and pointed to substantial evidence of inconsistencies in the record that warranted the ALJ's rejection of the extent of physical limitation of which Jeanine alleged. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (reiterating that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and noting that it presents a threshold for evidentiary sufficiency that is "not high").

The ALJ considered Jeanine's daily activities earlier in his Decision, at Step Three, in the context of the "paragraph B" criteria pertaining to Jeanine's severe mental impairments. The ALJ permissibly considered in that context that Jeanine could prepare simple meals, pay bills, go to doctors' appointments, and play pool as it went to the question of the extent of her limitation in understanding, remembering, or applying information, in interacting with others, and in concentrating, persisting, or maintaining pace. He did not equate such abilities to Jeanine's ability to physically perform fulltime medium work, but rather considered such activities to the extent relevant to Jeanine's mental functioning. The ALJ otherwise sufficiently analyzed the intensity, persistence, and limiting effects of Jeanine's mental impairments as actually shown in the record. He identified the following as evidence that Jeanine's mental impairments did not interfere to the extent she alleged: she often presented to mental health

appointments with significant symptoms of anxiety, but those same symptoms were not documented during visits with medical providers; her medical providers indicated her mental health symptoms were stable or well controlled; and there was "some" evidence Jeanine exaggerated her symptoms including that she stated she had great difficulty leaving her house but nevertheless met, dated, and became engaged to a man. AR 58. As for her medications and treatment, the ALJ observed that medication appeared to be helpful in treating Jeanine's mental limitations and "stability of her mental health conditions is noted as far back as June 2019." AR 59. Jeanine's mental health treatment did not require inpatient hospitalization, emergency room treatment, or crisis center intervention.

Jeanine's various remaining challenges to the ALJ's subjective symptom evaluation fail. Given that the ALJ considered the entirety of the record evidence – and found several inconsistencies – he necessarily considered the fact that Jeanine had "good days" and "bad days." He clearly found that overall, regardless of "good day" or "bad day," Jeanine's statements of limitation were not so consistent with the record as to warrant further restrictions in the RFC finding. To the extent Jeanine believes the ALJ determined the significance of particular medical findings himself where he relied upon a provider's observation that Jeanine was able to bend and twist "in many different directions that one would not expect someone with severe back pain to willingly attempt," Jeanine is wrong. AR 322. The ALJ did not find that provider's observation amounted to a statement of non-disability. The ALJ found Jeanine's observed physical movement undermined her statements that her symptoms of pain and limitation were so intense, persistent, and limiting as to render her disabled. In stating that the severity of Jeanine's symptoms was not entirely consistent with radiographic imaging of her cervical spine and left hip, it was in that instance the ALJ crossed the line in determining the significance of particular medical findings himself. But

9

that error was harmless where he otherwise properly engaged in the subjective symptom evaluation as discussed herein. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result).

Lastly, Jeanine unconvincingly argues the ALJ did not fulfill his duty to explore any perceived lack of medical treatment Jeanine received. SSR 16-3p states, in relevant part:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p at *9. In his Decision, the ALJ found Jeanine's reports of intense and unrelenting pain "not generally consistent with the treatment she received" where, among other things, Jeanine directed she be discharged from physical therapy two of the three times she was referred to it. The ALJ detailed that in April 2019, after missing two appointments in a row, Jeanine was discharged from therapy at her request. The treatment record from that date does not indicate Jeanine gave a particular reason for requesting discharge. AR 594-95. The ALJ observed Jeanine's rehab potential was noted to be "poor" in January 2020 due, in part, to her desire to only attend physical therapy once per week. AR 929. He noted there was record

10

of only one physical therapy appointment after the initial assessment in January 2020, Jeanine was discharged in March 2020 at her request, and her overall poor attendance was noted. The ALJ also noted Jeanine again presented to physical therapy for right hip pain in July 2020, and she testified at the hearing she was currently in physical therapy.

Even assuming the ALJ committed error in not explicitly asking Jeanine for further explanation as to why she did not fully commit to physical therapy, the error was harmless. The fact that Jeanine did not stick with physical therapy in two separate instances while she continued to complain of pain (as discussed in the Decision), continued to see medical providers for treatment and medication (as discussed in the Decision), continued to take medication (as discussed in the Decision), and was actively in physical therapy as recently as the August 2020 hearing was certainly a notable fact. She says the record is replete with notations of her not being able to leave her house, for having panic attacks in medical office waiting rooms, and for being unable to complete follow-up appointments because she was incarcerated. The ALJ acknowledged that Jeanine did not attend post-operative follow up because she was again incarcerated[3], but he also cited prison records revealing Jeanine continued to pursue medical attention even while incarcerated. Moreover, the record was also replete with recurring visits to medical providers and her follow through with prescribed medications. Jeanine even went so far at her hearing to say her medications were doing the job the doctors wanted them to do. AR 79. In other words, the record as a whole tells a story about Jeanine's failure to stick with physical therapy that differs from the story she suggests in her brief.

---

[3] The ALJ stated in his Decision, "According to the record, the claimant received disability insurance benefits beginning October 1, 2006 for bipolar disorder. Her benefits were suspended in 2016 after she was sent to prison for DUI." AR 53. Thus, Jeanine was "again" incarcerated in 2018.

11

C

Jeanine argues the ALJ's physical RFC finding is not supported by any of the State Agency medical consultants' opinions, Jeanine's treaters' opinions, or any other medical evidence or opinion of record. For the most part, she conflates her challenge to ALJ's physical RFC finding with her challenge to his subjective symptom evaluation. Because the Court has already determined that the ALJ's subjective symptom evaluation was sufficient and does not warrant remand, see *supra*, much of her arguments as to her physical RFC necessarily fail. The Court accordingly proceeds with its analysis, as the Commissioner does in its opposition, by considering the ALJ's evaluation of the medical opinions of record.

Per 20 C.F.R. § 416.920c(a), an ALJ is required to consider the persuasiveness of medical opinions using several factors, though the most important factors are supportability and consistency. *Id*. However, an ALJ need not adopt any one doctor's opinion. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians"). An ALJ is "responsible for making the determination or decision about whether [a claimant] is disabled" such that statements including that a person is unable to work or unable to perform regular or continuing work are statements reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3). Here, the ALJ stated explicitly that he did not provide an "articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c)," which he was explicitly permitted to do by Section 416.920b(c).

The ALJ's evaluation of the medical opinions of record is not automatically suspect simply because none of those opinions are reflected in their entirety in his physical RFC finding. As for the State Agency medical consultants' assessments that Jeanine could perform a range of light work, the ALJ found those assessments

12

"not persuasive." AR 59. The ALJ explained there was insufficient evidence to suggest Jeanine could perform no more than such work, and he referred back to the inconsistencies in the record and suggestions by providers that Jeanine may have been exaggerating her symptoms. The ALJ credited Jeanine's history of fusion and moderate degenerative joint disease of the left hip in limiting her to medium work. As for the July 2020 Medical Opinion: Ability to do Work-Related Activities by Tim Johnson, PA-C, the ALJ found it "not persuasive." AR 60. Johnson circled "No" to the statement that in his professional opinion Jeanine was capable of performing a fulltime job, he opined to Jeanine's limitation to standing or walking less than two hours during a regular 8-hour workday, lifting a maximum of 10 pounds occasionally and 10 pounds frequently, needing a sit-stand option, and missing more than three days of work per month. The ALJ explained the opinion was not persuasive where Johnson failed to provide any citations to the medical records in support of his various opinions and failed to indicate any physical, functional capacity evaluations that supported the opinions, and his opinions were at odds with the objective evidence of record.

For Johnson's and each additional opinion, the Court can easily trace the ALJ's path of reasoning between the evidence and his conclusions. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The reasons he gave – inconsistencies in the record, lack of supporting objective evidence, physical evaluations not supportive of her complaints – are anchored in the record. Again, the ALJ's subjective symptom evaluation reveals that he properly considered and confronted the objective medical evidence of record such that his reliance upon inconsistencies, etcetera in the context of the opinions of record was proper as well. So, too, did the ALJ make clear he appropriately

13

analyzed the opinions per Section 416.920c given his emphasis upon consistency and supportability. Though Jeanine argues PA-C Johnson did cite specifically to her specific diagnoses as support for his findings, that does negate the ALJ's reasons for finding Johnson's opinion "not persuasive." "Conditions must not be confused with disabilities." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *see also Allen v. Astrue*, No. 10 C 994, 2011 WL 3325841, at *12 (N.D. Ill. Aug. 1, 2011) ("A mere diagnosis does not establish functional limitations, severe impairments, or an inability to work").

### D

Jeanine also takes issue with the ALJ's mental RFC finding, arguing that the ALJ failed to include Jeanine's deficits in concentration, persistence, and pace the State Agency psychological consultants and psychiatric consultative examiner found, and he failed to adequately consider her treating sources' statements as to her mental health limitations. Jeanine thus argues that the ALJ presented the VE with a hypothetical question that did not include Jeanine's documented limitations in concentration, persistence, and pace. Among other things, the Commissioner takes issue with Jeanine's reliance upon the statements provided by Amber Weld, RN, BSN/QMHP[4] because Weld was not a treating provider and there is no evidence Jeanine's treating psychiatrist was aware of the existence of the questionnaires directed to him which Weld completed.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations *supported by the medical record.*" *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (emphasis added). Here, the ALJ analyzed the medical record at length as part of his evaluation of Jeanine's subjective symptoms as well as part of his evaluation of the opinions of

---

[4] Jeanine refers to Weld as a "treating source" along with Jeanine's treating psychiatrist Mohammad Sami, M.D. (on whose behalf it appears Weld completed the relevant forms).

record. Accordingly, as it found with regard to the ALJ's evaluation of opinions pertaining to Jeanine's physical impairments, the Court finds that much of Jeanine's arguments as to her mental RFC necessarily fail where the ALJ's subjective symptom evaluation was sufficient and does not warrant remand.

As to Amber Weld, Coordinator of Mental Health Nursing's "Physician Medical Report[s]" dated August 23, 2019 and February 3, 2020, the ALJ explained those opinions were "unpersuasive." Weld originally opined Jeanine was not able to work due to depression and posttraumatic stress disorder but could return to work with proper treatment and therapy. Weld opined less than six months later that Jeanine could not return to work, even with proper treatment. The ALJ explained the ability to work was reserved to the Commissioner, the opinions were vague and did not detail any actual limitations, and they were not supported by the objective evidence. The ALJ had already considered Jeanine's mental health medical evidence at length in the Decision and found discrepancies between, among things, her observed behavior and her complained-of behavior due to mental health issues. That the ALJ faulted Weld's opinion where it did "not detail any actual limitations," he abided by Section 416.920b(c)(3)(vi) where he recognized Weld's failure to provide descriptions about Jeanine's functional abilities and limitations. AR 60.

The ALJ considered Angela Lew's May 2019 psychiatric consultative examination notations that Jeanine performed below average on concentration and attention tasks and the State Agency psychological consultants' determinations that Jeanine could perform unskilled work due to deficits in concentration, persistence, or pace. The ALJ found the latter's determinations "persuasive" because they submitted Jeanine retained the capacity for simple work activities based, in part, on her activities of daily living. The Court yet again notes here that the ALJ made no error in his consideration of the evidence as whole

(including a review of Jeanine's activities of daily living) juxtaposed with Jeanine's subjective statements of her limitations. The Court also agrees with the Commissioner's way of putting it: that Dr. Lew and both State Agency psychological consultants found that Jeanine's concentration was impaired "fails to grasp that both the State Agency consultants concluded she could still perform simple tasks *despite* a moderate limitation in the general area of maintaining concentration, persistence, or pace." Dft's MSA (Doc. 15-1 at pg. 11) (emphasis in original). To the extent Jeanine cites record evidence she believes illustrates a shortcoming in the mental RFC, she essentially invites the Court to do what it cannot - reweigh the evidence. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999) (providing that a reviewing court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled"). All this taken together reveals that the ALJ identified and his mental RFC was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Albert v. Kijakazi*, No. 21-2592, -- F.4th --, 2022 WL 1561074, at *2 (7th Cir. May 18, 2022). This, in turn, means that the hypothetical question posed to the VE included all of Jeanine's mental limitations supported by the medical record.

Indeed, the State Agency psychological consultants' narratives provided Jeanine had the attentional and cognitive skills for one and two step unskilled tasks that could be sustained across a workday and work week, she was capable of carrying out routine chores and tasks, and she could tolerate work pressures. Such narratives are reflected in the mental RFC limiting Jeanine to "uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction." AR 52. Jeanine is also simply wrong that the ALJ was not to discredit or ignore opinions on issues reserved for the Commissioner

because "opinions of whether a claimant can work are still regarded as opinions to be considered." Plf's MSJ (Doc. 12-1 at pg. 13). 20 C.F.R. § 416.920b provides that statements on issues reserved to the Commissioner including that a claimant is not able to work are inherently neither valuable nor persuasive and the Social Security Administration "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).[5] To the extent Jeanine argues the ALJ erred by failing to consider prior administrative medical findings made in her previous application for which she received disability, she is again wrong. 20 C.F.R. § 416.913 states:

> A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants *at a prior level of review (see § 416.1400) in your current claim* based on their review of the evidence in your case record.

20 C.F.R. § 416.913(a)(5) (emphasis added).

### E

Assuming for the sake of argument that the ALJ erroneously discounted certain evidence which, had he not done so, would have resulted in finding Jeanine had greater physical and mental limitations, the error was harmless. The ALJ elicited testimony from the ALJ that even if the hypothetical individual was limited to light or sedentary exertional activity, there were still a significant number of jobs that the individual could perform. AR 105, 106. Even if the hypothetical individual was limited to light work with occasional climbing of ramps, stairs, and ladders, no climbing of ropes and scaffolds, and occasional

---

[5] Jeanine relies upon a regulation – 20 C.F.R. § 404.1527 (for disability insurance benefits, not SSI) – which does not apply to her SSI claim filed on March 8, 2019. 20 C.F.R. § 416.927 (SSI) states clearly, "For claims filed (see § 416.325) before March 27, 2017, the rules in this section apply. *For claims filed on or after March 27, 2017, the rules in § 416.920c apply*." (emphasis added).

stooping, kneeling, crouching, and crawling there were jobs that remained. The VE likewise testified that jobs would still remain with a further limitation to occasional work-related interaction with others and even with a limitation to no work-related interaction with the public. AR 108, 109. Inescapably, this is not a case where the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (stating the court would reverse "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence").

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Jeanine J., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on June 2, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE