UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JEANINE J., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-04044-SLD-JEH |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court are Plaintiff Jeanine J.'s motion for summary judgment, ECF No. 12; Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner") motion for summary affirmance, ECF No. 15; Magistrate Judge Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 17, recommending that the Court deny Jeanine's motion and grant the Commissioner's motion; and Jeanine's objection to the R&R, ECF No. 18. For the reasons that follow, the objection is OVERRULED, the R&R is ADOPTED, the motion for summary judgment is DENIED, and the motion for summary affirmance is GRANTED.

### BACKGROUND[2]

**I.   Procedural Background**

On March 8, 2019, Jeanine filed an application for supplemental security income ("SSI"), alleging disability beginning January 1, 2017. Her claim was denied initially and upon reconsideration. Jeanine then requested a hearing, which took place before an administrative law judge ("ALJ") on August 4, 2020. At the hearing, she amended her alleged onset of disability to

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted for her predecessor. The Clerk is directed to update the docket accordingly.
[2] The administrative record can be found at ECF Nos. 7–8. Citations to the record take the form: R. __.

1

March 8, 2019. The ALJ issued a decision denying Jeanine's claim on September 23, 2020. The Appeals Council denied her request for review on January 13, 2021; as such, the ALJ's September 23, 2020 decision is the final decision of the Commissioner. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Jeanine timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Compl. 1, ECF No. 1. Jeanine filed a motion for summary judgment on September 29, 2021, and the Commissioner filed a motion for summary affirmance on January 3, 2022. The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on June 2, 2022. Jeanine timely filed an objection on June 16, 2022.

## II.     ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 416.920(a)(4), concluding that Jeanine was not disabled during the relevant period. R. 48–49. At step one, he found that Jeanine had not engaged in substantial gainful activity since March 8, 2019, the amended alleged onset date. R. 49. At step two, he found that Jeanine had the following severe impairments: spine disorders, dysfunction of the left hip, depression/bipolar related disorders, and trauma- and stressor-related disorders. R. 49. At step three, the ALJ found that the severity of Jeanine's impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 50. Next, he found that Jeanine

> ha[d] the residual functional capacity [("RFC")] to perform medium work as defined in 20 CFR 416.967(c) except she [wa]s limited to frequent climbing of ramps, stairs, and ladders. She [wa]s limited to occasional climbing of ropes and scaffolds. She [wa]s limited to frequent kneeling, crouching, and crawling. She [wa]s limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction.

R. 52. At step four, the ALJ found that Jeanine did not have any past relevant work. R. 60. At step five, he found that, considering Jeanine's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. R. 60. Accordingly, the ALJ found that Jeanine was not disabled. R. 62.

## DISCUSSION

### I. Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R within fourteen days of its service. *Id*. 72(b)(2). The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. 72(b)(3). Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied Social Security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted). While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a

critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

**II.     Analysis**

In her motion for summary judgment, Jeanine argues that no medical evidence in the record supports the physical RFC assigned to her by the ALJ, that the ALJ erred in assessing her credibility and in discounting her subjective reports of symptoms, and that the ALJ failed to include all of her mental limitations when posing hypothetical questions to the vocational expert ("VE").  Pl.'s Mem. Supp. Mot. Summ. J. 5–17, ECF No. 12-1.[3]  Judge Hawley finds that the ALJ did not improperly discount Jeanine's symptom allegations, that the ALJ sufficiently drew a logical bridge from his evaluation of the medical opinions of record to his conclusion that Jeanine had the RFC to perform medium work, and that the ALJ did not err in formulating his mental RFC and that therefore the hypothetical questions posed to the VE included all of Jeanine's mental limitations supported by the medical record.  R&R 5–17.  He further concludes that even if the ALJ erred in failing to assign Jeanine greater physical and mental limitations, such error would be harmless because the VE testified that even if the hypothetical individual were limited to light or sedentary activity and had other physical and social limitations, there were still a significant number of jobs that the individual could perform.  *Id*. at 17–18.  Jeanine's

---

[3] In her reply to the Commissioner's motion for summary affirmance, Jeanine also argues that the ALJ erred in failing to account for the fact that she had previously been awarded disability benefits from 2006 to 2016.  *See* Reply 2–3, 7, ECF No. 16.  But Jeanine does not make this argument in her motion for summary judgment, and, as such, it is outside the scope of her reply brief.  *See* Civil LR 8.1(E) (providing only that a social security plaintiff "may file a reply brief *addressing issues raised in the [motion for summary affirmance]*" (emphasis added)).  Regardless, Jeanine concedes that "she once again had to meet the burden of proving her disability" in this proceeding, Reply 2, and she has not shown that she or her attorney took any sort of action to ensure that records from the prior proceeding were included in the record here or specially brought to the ALJ's attention, *see* R. 72–73 (acknowledging that Jeanine's counsel had no objection to the record and only sought to add a few recent medical records to the record); *see Harris v. Saul*, 835 F. App'x 881, 885 (7th Cir. 2020) (noting that it is "reasonable for [an] ALJ to proceed on a record that [the claimant's] . . . counsel [is] satisfied with"); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ.").

objection references all of Judge Hawley's findings. *See* Obj. 3–13.[4]  Thus, the Court will review each finding *de novo*.[5]

There is some overlap in Jeanine's arguments as to each of these three issues. For clarity, the Court will first address the ALJ's evaluation of Jeanine's subjective symptoms and credibility as they pertain to both physical and mental impairments. It will then turn to the ALJ's analysis of the medical opinion evidence pertaining to Jeanine's physical RFC. Finally, it will examine whether the ALJ adequately accounted for Jeanine's mental limitations when presenting hypotheticals to the VE.

### a. Subjective Symptom Assessment

Jeanine contends that the ALJ erred in evaluating her subjective symptoms because he "rejected all of Jeanine's statements that detract[ed] from his assessment" of her RFC. Pl.'s Mem. Supp. Mot. Summ. J. 16. She further asserts that the ALJ improperly extrapolated from her activities of daily living that she could perform medium work on a sustained basis. *Id*. at 15–16. Finally, she takes issue with the ALJ's use of "familiar boilerplate language" in concluding that her subjective symptoms were not supported by the objective medical evidence, which is "disfavor[ed]" by courts. *Id*. at 16–17.

---

[4] Jeanine also argues in her objection that the ALJ erred in not finding that she had the severe medically determinable impairments of fibromyalgia, chronic headaches, and impaired mobility. Obj. 3. Because she did not make this argument in her motion for summary judgment, she has waived it. *See Woodall v. Jo-Ann Stores, Inc.*, No. 1:14-cv-00263-SEB-DKL, 2015 WL 417660, at *2 (S.D. Ind. Jan. 30, 2015) ("Arguments not raised before the magistrate judge and raised for the first time in objections filed before the district judge are waived.").

[5] While the objection references each of Judge Hawley's findings, the organization of the objection is confusing, and Jeanine appears to conflate several issues. *See* Obj. 3–13. When objecting to a magistrate judge's report and recommendation, a party must "specify each issue for which review is sought." *Johnson*, 170 F.3d at 741. Due to the confusing organization of the objection, the Court is not convinced that the issues for review have been clearly identified. Nevertheless, as references to each of Judge Hawley's findings appear in the objection, the Court will review each finding *de novo*.

5

When evaluating a claimant's allegations of symptoms, the ALJ will use a two-step process. *See* Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[6] First, the ALJ will determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id*. at *3. If there is, he will then "evaluate the intensity and persistence of [the] individual's symptoms such as pain and determine the extent to which [the] individual's symptoms limit his or her ability to perform work-related activities," looking to the entire case record including the objective medical evidence and the claimant's statements about her symptoms. *Id*. at *4. When addressing the claimant's own statements, the ALJ "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id*. at *6. "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. at *8. He must "explain which of an individual's symptoms [he] found consistent or inconsistent with the evidence . . . and how [his] evaluation of the individual's symptoms led to [his] conclusions." *Id*. In making this assessment, the ALJ can consider what "precipitate[s] or aggravate[s] [a claimant's] symptoms, what medications, treatments or other methods [a claimant] use[s] to alleviate them, and how the symptoms may affect [a claimant's] pattern of daily living." 20 C.F.R. § 416.929(c)(3).

The Court finds no error in the ALJ's evaluation of Jeanine's subjective physical symptoms. He thoroughly addressed Jeanine's allegations as to her symptoms and examined

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

whether they were consistent with the other evidence. First, he detailed Jeanine's extensive claims of constant pain and difficulty moving. R. 52–53. Then, to support his conclusion that Jeanine's statements were "not entirely consistent with the objective medical and other evidence," he laid out the medical evidence in the record and pointed out inconsistencies between that evidence and her alleged symptoms. *See* R. 53–55. For example, he noted that at an appointment in March 2019 with a primary care provider, she complained of chronic neck and back pain, but the provider wrote that, in attempting to show him "how her back crack[ed] when she move[d] certain ways," Jeanine was "able to bend and twist her back in many different directions that one would not expect someone with severe back pain to willingly attempt." R. 54 (quoting R. 322). Further, "her range of motion was normal." R. 54. At an April 2019 appointment, she "reported right lateral and midline neck pain that radiates down the right trapezius," describing the pain as "burning and stabbing" and rating it a seven to ten on a ten-point scale. R. 54. She also "complained of generalized right arm weakness." R. 54. But on exam, she "exhibited full strength in each of her extremities, normal reflexes, and a normal, steady gait with good stride." R. 54. At a later appointment with a new primary care provider, the provider "noted the claimant seemed to demonstrate signs slightly out of proportion to her physical examination." R. 54.[7] She sought out emergency treatment in June 2019, reporting aching pain that was a ten out of ten in severity, but "she did not appear in apparent distress." R. 55.[8] Based on these inconsistencies, the ALJ found that Jeanine's physical symptoms did not support a finding of disability. *See* R. 57.

---

[7] Jeanine claims that the ALJ does not identify the two providers who noted that Jeanine's symptoms were inconsistent with her presentation, Pl.'s Mem. Supp. Mot. Summ. J. 9, but the ALJ cited to the records reporting both of these instances, *see* R. 54 (citing R. 320–24); R. 54–55 (citing R. 591–93).

[8] Jeanine asserts that it would be unreasonable to assume that medical providers would notice abnormalities outside of their specialties. Pl.'s Mem. Supp. Mot. Summ. J. 10. But it would be impermissible to order remand on that basis, as that would essentially constitute reweighing the evidence to assign lesser weight to observations by providers not pertaining to their specialties, which the Court cannot do. *See McKinzey*, 641 F.3d at 889.

The ALJ also noted that there were inconsistencies in the objective medical evidence. R. 57. He pointed out that in April 2019, Jeanine met with a neurosurgery provider, who found that she "exhibited full strength in each of her extremities, normal reflexes, and a normal, steady gait with good stride." R. 57. But at a meeting with a physical therapist that same day, she was observed to have "decreased range of motion and strength and gait abnormalities." R. 57. He noted that in July 2019, "her straight leg raise was negative, her deep tendon reflexes were normal, and she ambulated normally," and in September 2019, "she was noted as using a cane, but she had no vertebral tenderness or gross weakness on examination." R. 57. However, just a few months later, she had a "jump response to cervical and lumbar palpation," she "exhibited limited range of motion in the back and bilateral shoulders and refused to repeat movements," and "[h]er hip, knee, and ankle strength was reduced, and she demonstrated a 'very positive' bilateral straight leg raise." R. 57.

Jeanine argues that the ALJ did not explain "[h]ow this translates to Jeanine lacking credibility," Pl.'s Mem. Supp. Mot. Summ. J. 9, and insists that these inconsistencies merely show that she has good days and bad days, a pattern to which she has "credibly testified," Obj. 5. As Judge Hawley finds, it is clear from the manner in which the ALJ recited this chain of events that he "found it curious that Jeanine's examination results could vary as they did in that short timeframe," undermining Jeanine's credibility. *See* R&R 7.[9]

---

[9] Jeanine also objects to the ALJ's conclusion that her allegations of neck pain were inconsistent with the objective medical evidence because imaging of her cervical spine "consistently shows post-operative changes with intact hardware and no[t] more than mild anterolisthesis." Pl.'s Reply 3 (quoting R. 57). The Court agrees that, in the absence of an interpretation of the imaging by a medical provider, this conclusion by the ALJ was inappropriate. *See Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." (quotation marks omitted)). However, the ALJ otherwise adequately supported his determination that Jeanine's subjective symptoms were inconsistent with the record as a whole. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.").

8

Moreover, even though the ALJ found that Jeanine's subjective symptoms did not support a finding of disability, he acknowledged the evidence that supported the existence of neck and hip pain, *see, e.g.*, R. 54 (reporting limitations in movement and decreased strength at a physical therapy appointment); R. 55 (reporting movement limitations, decreased strength, and a "'very positive' bilateral straight leg raise" at a physical therapy appointment), and accordingly limited her to medium work, and, due to her neck and hip pain, found she could "only frequently climb ramps, stairs, and ladders," "only occasionally climb ropes and scaffolds," and was "limited to frequent kneeling, crouching, and crawling." R. 57. Thus, the ALJ did not, as Jeanine claims, *see* Pl.'s Reply 5, ECF No. 16, selectively discuss the medical evidence showing normal findings while disregarding those supporting limitations. To the extent that Jeanine is asking the Court to assign greater weight to her subjective reports of symptoms, this is outside the Court's purview. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) ("[The court is] not allowed to displace the ALJ's judgment by reconsidering facts or evidence . . . .").

The ALJ also adequately evaluated Jeanine's alleged symptoms of mental impairments. He noted that Jeanine alleged "'bad' social anxiety," as well as "difficulty completing tasks, concentrating, understanding, following instructions, and getting along with others, including authority figures." R. 52. But he found that her alleged symptoms were not consistent with the objective medical record. While she "often presented to mental health appointments with significant symptoms of anxiety . . . , these same symptoms were not documented during visits with her medical providers, who often indicated she was in no acute distress." R. 58. The ALJ reasoned that it was fair "to assume that if [she] had debilitating anxiety, some reference to distress would be noted." R. 58. And several medical providers "indicated her mental health symptoms were stable or well controlled." R. 58. Moreover, "there is some evidence to suggest

[Jeanine] exaggerated her symptoms"—for example, she stated "she has great difficulty leaving her house," but "during the relevant period under review, [she] met, dated, and became engaged to a man" and "plays pool with her fiancé." R. 58.

Jeanine takes particular issue with some of the factors the ALJ considered in finding that her symptoms were not supported by the medical evidence. First, she protests that the ALJ improperly extrapolated from her daily activities that she could perform medium work. Pl.'s Mem. Supp. Mot. Summ. J. 15–16. While the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities . . . does not necessarily translate into an ability to work full-time," it is nonetheless "appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).[10] At step three, the ALJ looked to Jeanine's testimony that "she could prepare simple meals, pay bills, go to doctor's appointments without reminders, take medications without reminders, shop in stores and online, play pool, and knit" to support his finding that she had no more than a mild limitation in understanding, remembering, or applying information. R. 50. And in formulating her RFC, the ALJ addressed Jeanine's daily activities, such as giving food and water to her cat, preparing simple meals and performing household chores with breaks, and occasionally shopping in stores. R. 52. However, he did not assume she is able to work solely based on these activities. Rather, he looked to these activities as merely one factor undermining Jeanine's credibility as to her reports of symptoms, along with other factors such as inconsistencies between her symptoms and the objective medical evidence. *See* R. 57–58; *see, e.g.*, *Jeske v. Saul*, 955 F.3d 583, 592–93 (7th Cir. 2020) ("Here, the ALJ did not reason that Jeske's activities of daily living are as demanding

---

[10] While *Roddy* cites to an earlier version of social security regulations, *see* 705 F.3d at 639 (citing SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996)), the current version of the regulation also permits ALJs to look at a claimant's daily living activities, *see* SSR 16-3p, 2017 WL 5180304, at *6.

as those of full-time work. Rather, the ALJ considered Jeske's activities to determine whether her symptoms were as severe and limiting as she alleged.").

She also contends that the ALJ improperly found that her reports of constant pain were not generally consistent with the treatment she received, in particular her poor attendance at and multiple requests to be discharged from physical therapy. Pl.'s Mem. Supp. Mot. Summ. J. 10; Reply 6.[11] She asserts that the ALJ had a duty to explore the reasons for her failure to continue with physical therapy. Reply 6. She indicates that "at times, her extreme anxiety interfered with appointments and that she had not been able to attend therapy due to an incarceration." Obj. 6–7.[12] The Commissioner responds that this is merely speculation after the fact and that the record is entirely devoid of evidence supporting her justification. Def.'s Mem. Supp. Mot. Summ. Affirmance 7, ECF No. 15-1.

An ALJ "will consider an individual's attempts . . . to follow treatment once it is prescribed" and may, "if the individual fails to follow prescribed treatment that might improve symptoms, . . . find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3P, 2017 WL 5180304, at *9. But the ALJ must first "consider[] possible reasons he or she may not comply with treatment" and "*may* need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with . . . treatment in a manner consistent with his or her complaints." *Id.* (emphasis added).

---

[11] The ALJ also found that Jeanine's alleged mental symptoms were undermined by a treatment record not consistent with disabling mental impairment, as, "[d]uring the relevant period, [she] has not required inpatient hospitalization, emergency room treatment, or crisis center intervention for any mental health symptoms," "[t]here is no reference to suicidal ideation or homicidal ideation," and "there were no signs of psychosis during her appointments." R. 58. Jeanine does not appear to take issue with this finding.
[12] The Court notes that it appears that her last period of incarceration ended in March 2019, *see* R. 81, and that the two instances in which she requested to be discharged from physical therapy occurred after that date, *see* R. 54–55.

The ALJ noted that in mid-2019, Jeanine was discharged from physical therapy at her request after missing two appointments in a row. R. 54. He cited to the physical therapy records, which provided no explanation for why Jeanine asked to be discharged. *See* R. 594–95; R. 315; *cf.* R. 314 (noting Jeanine cancelled one physical therapy session due to having the flu). She began physical therapy again in January 2020 but attempted only one session before requesting to be discharged. R 55. Again, the records cited provide no reason for her request. *See* R. 933. The ALJ did note that she began physical therapy again in July 2020, and she testified she was still attending at her hearing on August 4, 2020. *See* R. 55. Throughout these periods, the ALJ noted that Jeanine continued to attend appointments with various medical providers. *See* R. 54–55.

At the hearing, Jeanine testified generally that it was "difficult for [her] to go to a doctor's office" because being around people made her anxiety level go up. R. 99. She did not comment that anxiety was the reason she cancelled her physical therapy twice. Indeed, she does not point to anything showing that she explicitly told the ALJ that she repeatedly quit physical therapy because of anxiety. And while she cites to *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), in support of her argument, *see* Pl.'s Reply 6, in that case, the claimant's records included that he was out of compliance with his medication and did not seek regular treatment because of his inability to pay, *Craft*, 539 F.3d at 678–79 (finding that the ALJ should have addressed those notes as well as asking the claimant about his lack of treatment). No such notations exist in Jeanine's record.

Even if the ALJ should have explicitly asked Jeanine why she failed to continue with physical therapy, this error would not require remand. While the ALJ used Jeanine's failure to follow through with physical therapy as support for discounting her subjective symptoms,

12

without it, substantial evidence still supports the ALJ's decision, as detailed throughout this Order.  *See Barnett*, 381 F.3d at 668.

Finally, Jeanine complains that the ALJ improperly used "familiar boilerplate language . . . to discredit Jeanine's statements." Pl.'s Mem. Supp. Mot. Summ. J. 16.  The text that Jeanine quotes does not actually appear in the ALJ's decision.  *See id*.  The Court presumes that the language with which Jeanine takes issue is the following:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce severe symptoms.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision.  Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

R. 53.  It is true that the Seventh Circuit opposes using similar language *on its own* to assess the credibility of a claimant's alleged symptoms because it is impossible to determine "the specific evidence the ALJ considered in determining that [a] claimant's complaints were not credible." *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (quotation marks omitted).  But "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."  *Filius v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).  As articulated throughout this Order, the ALJ's conclusions are well supported by the remainder of the ALJ's analysis.  As such, any "boilerplate" language does not undermine the ALJ's assessment of Jeanine's credibility.

### b.  Medical Opinions and Physical RFC Formulation

Jeanine argues at summary judgment that the ALJ erred in assigning her a medium RFC because, of the three medical opinions that opine on her physical capacity, two assign her a light RFC and one assigns her a less than sedentary RFC and thus no medical opinion supports a

13

medium RFC. *See* Pl.'s Mem. Supp. Mot. Summ. J. 6.[13] In this section, Jeanine includes some of her arguments about the ALJ's evaluation of her subjective symptoms. *See id*. at 9–10. As the Court has already found that the ALJ did not err in this regard, *see supra* Section II(a), it will focus instead on Jeanine's objection to how the ALJ evaluated the medical evidence of record.

20 C.F.R. § 416.920c(a) provides that an ALJ "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . , including those from [a claimant's] medical sources." He "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (refuting the claimant's argument that "the ALJ erred by failing to adopt her [RFC] as determined by any of her physicians"). However, he must "articulate how [he] considered the medical opinions . . . in [a claimant's] claim" according to certain criteria. 20 C.F.R. § 416.920c(a). He should state how persuasive he finds all of the opinions, focusing on the supportability and consistency of each opinion. *Id*. § 416.920c(b); *see id* § 416.920c(c)(1) (explaining the factor of supportability as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be"); *id*. § 416.920c(c)(2) (explaining the factor of consistency as "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"). He should also consider other factors including the medical provider's relationship with the claimant and the provider's specialization and may, if necessary, explain how he considered them in his decision. *Id*. § 416.920c(b)(2). Opinions from medical sources as to whether a claimant is disabled are considered inherently neither

---

[13] Jeanine initially states that there were four such medical opinions but only identifies three. *See* Pl.'s Mem. Supp. Mot. Summ. J. 6.

valuable nor persuasive, and the ALJ need "not provide any analysis about how [he] considered such evidence." *Id*. § 416.920b(c)(3).[14]

Contrary to Jeanine's claim, *see* Obj. 9–10,[15] the ALJ provided the analysis required under § 416.920c. He explicitly addressed each of the three opinions indicated by Jeanine and explained how persuasive he found each one and why. Looking to the opinions of consultative examiners Dr. Kathleen Treanor, *see* R. 124–26, 127, and Dr. Michael Nenaber, *see* R. 140–42, 144, the ALJ found their determinations that Jeanine could perform a range of light work "not persuasive," R. 59. He stated that there was "insufficient evidence to suggest [Jeanine] can perform no more than a reduced range of light work," R. 59. And he pointed to the "great number of inconsistencies in the record," such as the discrepancies between Jeanine's subjective symptom reports and the objective medical evidence, addressed elsewhere in the decision, which tend to undermine Treanor and Nenaber's conclusions that Jeanine's impairments require limitation to light work. R. 59. The Court sees nothing in either Treanor or Nenaber's medical opinion to suggest that by his analysis, the ALJ ignored an entire line of evidence supporting greater limitations for Jeanine. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating that an ALJ "may not ignore entire lines of contrary evidence").

As for the opinion of Tim Johnson, Jeanine's medical provider, *see* R. 1027, the ALJ found it "not persuasive," R. 60. After detailing the limitations Johnson assigned to Jeanine, including lifting a maximum of 10 pounds occasionally and less than 10 pounds frequently, the need to lie down at unpredictable times, and the need to miss more than 3 days of work per

---

[14] Jeanine claims that, although medical opinions on the ultimate question of disability are not dispositive, the ALJ should still consider them as evidence. Pl.'s Mem. Supp. Mot. Summ. J. 13. This is clearly incorrect under 20 C.F.R. § 416.920b(c)(3).
[15] Jeanine cites to 20 C.F.R. § 404.1520c in her objection, Obj. 9, but that regulation pertains to disability insurance benefits. The pertinent regulation for SSI is 20 C.F.R. § 416.920c.

15

month, the ALJ noted that Johnson "fails to provide any citations to the medical records in support of these opinions or any other basis for his opinion," pointed out that Johnson "fails to indicate any physical, functional capacity evaluations that support his opinions," and found that "his opinions are at odds with the objective evidence of record," as explained elsewhere in the decision. R. 60. By pointing to the lack of supporting evidence and the inconsistency with other evidence, the ALJ adequately addressed the required factors under 20 C.F.R. § 416.920c. Jeanine argues that Johnson's opinion does cite to objective medical evidence to support his opinion, but this "evidence" is merely her diagnoses, not objective evidence of her limitations. *See* Pl.'s Mem. Supp. Mot. Summ. J. 9. "A mere diagnosis does not establish functional limitations, severe impairments, or an inability to work," *Allen v. Astrue*, No. 10 C 994, 2011 WL 3325841, at *12 (N.D. Ill. Aug. 1, 2011), and citations to her diagnoses do not support Johnson's opinion.

In essence, Jeanine's objection to the ALJ's handling of these three opinions is a request to reweigh the evidence in Jeanine's favor, which the Court simply cannot do. *See McKinzey*, 641 F.3d at 889. The ALJ conducted the required analysis of each opinion and found that the record does not support limitations more restrictive than medium work with frequent climbing of ramps, stairs, and ladders; frequent kneeling, crouching, and crawling; and occasional climbing of ropes and scaffolds. *See* R. 52. Through his evaluation of these opinions and his assessment of Jeanine's subjective symptoms, the Court can trace the path of the ALJ's reasoning from the evidence to his assessment of Jeanine's physical RFC. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (finding it sufficient where the ALJ's "opinion enables [the court] to trace the path of the ALJ's reasoning").

However, even if the ALJ erred in assigning her a medium RFC and should have instead assigned her a light RFC with greater restrictions, that error would be harmless. *See McKinzey*, 641 F.3d at 892 ("[A]dministrative error may be harmless . . . ."); *Musgrove v. Berryhill*, No. 17 CV 50117, 2018 WL 1184734, at *5 (N.D. Ill. Mar. 7, 2018) ("The harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand."). At the hearing, in addition to asking the VE whether jobs existed for an individual with Jeanine's RFC, the ALJ posed a series of hypotheticals with more restrictive limitations and a light RFC and asked the VE whether these individuals could perform work existing in significant numbers in the economy. R. 104–109. When asked about an individual with a light exertional level, limited to occasional climbing of ramps, stairs, and ladders; no climbing of ropes and scaffolds, occasional stooping, kneeling, crouching, and crawling; and only occasional work-related interaction with coworkers and supervisors and no work-related interaction with the public, the VE opined that such an individual could work as a mail clerk or a cleaner polisher, with over 100,000 such positions existing in the nation. *See* R. 106–09. As such, even if the Court were to remand with the order that the ALJ assign Jeanine a light RFC, it can be confident that the ALJ would still find her able to perform a significant number of jobs.

    c.  **Mental RFC and VE Hypotheticals**

At summary judgment, Jeanine also argues that the ALJ erred by failing to account in his mental RFC for Jeanine's limitations in concentrating, persisting, and maintain pace, which were indicated by the psychological opinions in the record. Pl.'s Mem. Supp. Mot. Summ. J. 11. As such, she contends, these deficits were not included in the hypothetical to the VE, and thus the jobs the VE suggested were not reflective of Jeanine's true limitations. *Id.* at 15.

In his decision, the ALJ found the opinions by psychological consultants Leslie Fyans and David Voss "persuasive," as they were supported by evidence in the record. R. 59. While they found that Jeanine had concentration and persistence limitations, the consultants cited to Jeanine's activities of daily living and evidence regarding her cognitive and attentional skills to conclude that she could carry out simple one and two step unskilled tasks and had the mental capacity for work related activities that involved simple instructions and routine or repetitive tasks. *See* R. 126–27 (Fyans opinion); R. 142–43 (Voss opinion). The ALJ also found the opinion by Dr. Angela Lew,[16] the psychological consultative examiner, that if Jeanine were awarded funds, she would require assistance in managing those funds to be persuasive, noting that Dr. Lew cited to Jeanine's below-average performance on questions testing her judgment and Jeanine's history of drug and alcohol abuse. R. 59; *see* R. 619–23 (Lew opinion).

However, the ALJ did not find the two opinions by Amber Weld, the first of which stated that Jeanine was not able to work but could return to work with proper treatment and the second of which stated that Jeanine would not be able to return to work at all, to be persuasive, as they are "vague, do not detail any actual limitations, and are not supported by objective evidence." *See* R. 59–60; *see* R. 740 (Weld August 2019 opinion); R. 823 (Weld February 2020 opinion). He discounted Weld's conclusions as to whether Jeanine was able to work, as that is an issue reserved to the Commissioner. R. 60.

Based on his assessment of these opinions, along with his evaluation of Jeanine's alleged mental symptoms, *see supra* Section II(a), the ALJ found that Jeanine had "moderate limitations in her ability to concentrate, persist, or maintain pace" and accordingly limited her to "jobs that require up to detailed but uninvolved tasks with few concrete variables, little in the way of

---

[16] Jeanine refers to Dr. Lew as "Angela Long." Pl.'s Mem. Supp. Mot. Summ. J. 11–12.

change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction." R. 57. He included these limitations in the hypothetical he posed to the VE. *See* R. 105.

The Court finds that the mental RFC assigned to Jeanine is supported by substantial evidence, and it can easily trace the path of the ALJ's reasoning from the evidence to his conclusion. *See Stephens*, 766 F.2d at 287. As such, he did not err in evaluating the mental opinion evidence of record. And as he included all assigned limitations, as supported by the record, in the hypothetical to the VE, Jeanine has not shown error requiring remand at step five. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.").

## CONCLUSION

For the foregoing reasons, Plaintiff Jeanine J.'s objection, ECF No. 18, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation, ECF No. 17, is ADOPTED. Plaintiff's motion for summary judgment, ECF No. 12, is DENIED, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's motion for summary affirmance, ECF No. 15, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 27th day of September, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
